IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO |
| v. | ) ) | |
| EAGLE UNITED TRUCK WASH, LLC, | ) ) | **COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Peter D. Holmes ("Holmes"), who was adversely affected by such practices. As alleged with greater specificity below, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that the Defendant, Eagle United Truck Wash, LLC ("Defendant"), engaged in race discrimination against Holmes by subjecting him to racial harassment by creating and maintaining a hostile work environment because of his race, black, and by terminating him on account of his race and in retaliation for engaging in the protected activities of reporting harassment and opposing discriminatory employment practices.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(l) and (3).

4. At all relevant times, Defendant Eagle United Truck Wash, LLC, has continuously been a Colorado limited liability company doing business in the Commonwealth of Pennsylvania and Northumberland County, Pennsylvania, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant Eagle United Truck Wash, LLC, has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Holmes filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On July 17, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On August 6, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTS

12. Defendant operates commercial truck washing facilities at truck-stop locations around the United States.

13. One of Defendant's truck washing facilities is located in Milton, Northumberland County, Pennsylvania (the "Milton Facility").

14. On January 7, 2014, Holmes was hired as a Truck Washer at Defendant's Milton Facility.

15. Holmes was the only black employee at the Milton Facility for the majority of his employment.

16. Throughout Holmes' employment with Defendant, Fidel Lopez ("Lopez") was the manager of the Milton Facility.

17. Lopez was authorized by Defendant to exercise authority on Defendant's behalf at the Milton Facility.

18. Lopez was authorized by Defendant to hire employees at the Milton Facility.

19. Lopez was authorized by Defendant to terminate the employment of employees at the Milton Facility.

20. Lopez was authorized by Defendant to receive employee discrimination and/or harassment claims at the Milton Facility.

21. Lopez was authorized by Defendant to investigate discrimination and/or harassment claims made by employees at the Milton Facility.

22. Lopez was authorized by Defendant to discipline employees at the Milton Facility on account of their engaging in discriminatory or harassing behavior.

23. During each shift, the Milton Facility also employed a lead employee known as a shift supervisor who monitored operations and handled customer interactions.

24. Throughout Holmes' employment with Defendant, employees routinely made racially-based remarks including "nigger" and "towelhead" to describe Holmes, customers, and other employees.

25. At all relevant times, Anthony Faust ("Faust") was one of Defendant's shift supervisors at the Milton Facility.

26. Faust used the term "nigger," "the nigger" and/or "our nigger" on a near daily basis at the Milton Facility, in casual conversation, and in addressing and referring to Holmes.

27. At all relevant times, Thomas Fuller ("Fuller") was one of Defendant's shift supervisors at the Milton Facility.

28. Fuller used the term "nigger," "the nigger" and/or "our nigger" on a near daily basis at the Milton Facility, in the presence of manager Lopez, while in casual conversation, and in addressing and referring to Holmes. Lopez made no effort to eliminate the racially-charged language.

29. Several times throughout his employment, Holmes complained to manager Lopez about the employees' use of racially charged language at the Milton Facility, but Lopez took no action to correct the environment, and the racially charged language persisted.

30. On or about December 30, 2015, the "Employee Rights" poster in the Milton Facility's break room was covered with a piece of paper so that the poster instead read "Niggers Rights."

31. Holmes complained to manager Lopez about the racially charged poster, and Lopez took no immediate action to remove it.

32. Despite Holmes' complaint, the defaced poster remained up for several days, and eventually appeared taped to shift supervisor Faust's cell phone.

33. On March 23, 2016, a new employee joined Defendant and shift supervisor Fuller introduced him to Holmes as "the nigger that works here." Holmes spoke with manager Lopez about this incident, who again, took no action

34. The same day as and not long after Holmes' complaint to Lopez, Lopez terminated him.

35. Lopez terminated Holmes because of his race, black, and in retaliation for his complaints for racial harassment.

36. Throughout Holmes' employment, Defendant considered Holmes to be a hardworking and dependable employee, who had no performance or disciplinary issues.

## COUNT I
## Race Discrimination (Hostile Work Environment)

37. The Commission hereby incorporates by reference the allegations contained in paragraphs 12 through 36 as if fully set forth herein.

38. Since at least January 2014, Defendant has engaged in unlawful employment practices at its Milton Facility in violation of Section 703(a)(l) of Title VII, 42 U.S.C. § 2000e-2(a)(l) by engaging in race discrimination against Holmes by subjecting him to severe or pervasive racial harassment, and by creating and maintaining a hostile work environment, because of his race (black).

39. Defendant took no preventative or corrective measures to eliminate the racial harassment, despite it being aware through observation and complaints that the harassment was ongoing.

40. The unlawful employment practices complained of above were intentional.

41. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Holmes.

### COUNT II
### Race Discrimination (Termination)

42. The Commission hereby incorporates by reference the allegations contained in paragraphs 12 through 36 as if fully set forth herein.

43. Defendant engaged in an unlawful employment practice at its Milton Facility in violation of Section 703(a)(l) of Title VII, 42 U.S.C. § 2000e-2(a)(l) by terminating Holmes on account of his race, black.

44. The unlawful employment practice complained of above was intentional.

45. The unlawful employment practice complained of above was done with malice or with reckless indifference to the federally protected rights of Holmes.

## COUNT III
### Retaliation (Termination)

46. The Commission hereby incorporates by reference the allegations contained in paragraphs 12 through 36 as if fully set forth herein.

47. Defendant engaged in an unlawful employment practice at its Milton Facility in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by terminating Holmes on account of his engaging in protected activity under Title VII, including, but not limited to, complaining to Lopez about the continuous racially-charged remarks in the workplace and the defacement of the Employee Rights poster.

48. The unlawful employment practice complained of above was intentional.

49. The unlawful employment practice complained of above was done with malice or with reckless indifference to the federally protected rights of Holmes.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, attorneys, and all persons in active concert or participation with it, from maintaining a racially hostile work environment.

B. Order Defendant to institute and carry our policies, practices, and programs that provide equal employment opportunities for black employees, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Holmes by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, as well as compensation for past and future pecuniary losses resulting from the unlawful employment practices described above,

which were reasonably incurred as a result of Defendant's conduct, in amounts to be determined at trial.

D. Order Defendant to make whole Holmes by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above including, but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self esteem, and loss of civil rights, in amounts to be determined at trial.

E. Order Defendant to pay Holmes punitive damages for its malicious and reckless conduct, as described above, in an amount to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Supervisory Trial Attorney

/s/ Joshua E. Zugerman
JOSHUA E. ZUGERMAN
Trial Attorney
Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107
Phone: (267) 589-9763
Fax: (215) 440-2848
joshua.zugerman@eeoc.gov
PA 205774

ATTORNEYS FOR PLAINTIFF

Dated:   September 21, 2018